UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ALBERT M. BECKARY,

             Petitioner,

     -vs-

PAUL CHAPPIUS, WARDEN,
ELMIRA CORRECTIONAL FACILITY


             Respondent.

_____

**DECISION AND ORDER**
**No. 11-CV-00850**(MAT)

## I.  Introduction

     Petitioner Albert M. Beckary ("Petitioner"), through counsel, has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 25, 2008, in New York State, County Court, Wyoming County, convicting him, upon a plea of guilty, of Attempted Assault in the First Degree (N.Y. Penal Law ("Penal Law") §§ 110.00, 120.10[1]).  Petitioner was sentenced to a determinate term of fifteen years imprisonment with five years of post-release supervision.

## II.  Factual Background and Procedural History

### A.  Introduction

     Petitioner was indicted by a Wyoming County grand jury and charged with Attempted Murder in the Second Degree (Penal Law

§§ 110.00, 125.25[1]), Assault in the First Degree (Penal Law § 120.10[1]), and Assault in the Second Degree (Penal Law § 120.05[1]).  The charges arose from an incident that occurred on the evening of June 5, 2007, wherein 44-year-old Petitioner beat 71-year-old Gary Preen ("Preen" or "the victim"), causing serious physical injury to Preen, in the parking lot of the "Vet's Club" in the Village of Perry, New York.

### B.    Pre-Plea Proceedings

On June 20, 2007, Petitioner appeared with counsel at a felony hearing held in the Village Court, Village of Perry, New York. Caroline Vosberg ("Vosberg") testified that she was tending bar at the "Vet's Club" on the night of June 5, 2007.  See Resp't Ex. A at 6, 10.  At approximately 9:30 p.m., she had to "throw [Petitioner] out" of the club because he "had too much to drink" and "was bothering people."  Id. at 6-7, 10-11.  Specifically, Petitioner "started yelling at [Preen]" but "[Preen] didn't want to fight," and instead "put his beer down" and left.  Id. at 10-11. Therafter, Vosberg heard a noise outside, so she opened the back door and saw Petitioner's "upper body," as he was standing behind a vehicle.  Vosberg thought that Petitioner "was beating on somebody's vehicle or something . . . ."  Petitioner "started screaming and jumping up and down.  I hate you.  I'm going to kill you.  Bunch of swear words."  Vosberg testified that "it dawned on" her that "it was [Preen's] truck behind [Petitioner] and [she]

couldn't see [Preen]." _Id._ at 7.  Vosberg "started screaming," but Petitioner "kept jumping and jumping and kicking." _Id._  Petitioner eventually "turned and looked at [Vosberg] and starting coming at" her, at which time she "slammed the door shut" and "locked it." _Id._ at 7-8.  She called 911, and when she went out to see the victim in the parking lot, "[h]e was halfway under his vehicle. There was blood all over the place.  His face was swollen.  He was . . . barely breathing and conscious.  His ear . . . looked like it was falling off."  Vosberg "thought [Preen] was dead." _Id._ at 8. Vosberg confirmed that certain pictures offered by the People accurately depicted the victim's injuries that night.  _Id._ at 9. Her hearing testimony also matched her sworn police statement from the night of the assault.  _See_ Resp't Ex. C.

Police Officer Antonio Geraci of the Perry Police Department testified at the felony hearing that on the night of the assault, he arrested Petitioner at his home.  _See_ Resp't Ex. A at 12-14, 20. Following his arrest, Petitioner made certain sel-incriminating statements that Officer Geraci recorded in a written report that was admitted into evidence at the hearing.  _See_ Resp't Ex. A at 14-20.  According to Officer Geraci's report, Petitioner told Officer Geraci that "he was stupid for what he had done to Gary Preen," and that he had "just lost it and beat the hell out of him."  _See_ Resp't Ex. D.  Petitioner further stated, "[o]h my god[,] I am stupid[,] I can't believe this, I am a bad man, and I am in jail

for beating up that man.  This is God[']s way of telling me something.  I am learning a lesson of God[']s way.  I never disrespect my elders and I can[']t believe I did that to Gary.  I have hated him for so long and now this happens." Id.

Carol Preen, the victim's wife, testified that her husband was rushed to the hospital after the assault.  His injuries included "bleeding on the brain," "a very huge hematoma on the right eye," a gash over the eye, and "his ear was torn away," such that it "had to be cauterized and stitched." See Resp't Ex. A at 22-23.  At the time of the hearing, the victim still needed speech and other therapy. See Resp't Ex. A at 23-24.

According to hospital records, Preen suffered an "[a]ssault with subarachnoid hemorrhage, cerebral contusion and abrasions." See Resp't Ex. E at 1, 3.  Photographs taken by the police at the hospital showed Petitioner's badly beaten face, which required multiple stitches. See Resp't Ex. B.  He was discharged eight days later, on June 14, 2007, but required continuing "speech therapy" as well as occupational and physical therapy. See Resp't Ex. E.

Officer Geraci also testified at a grand jury proceeding, where he offered the same account of Petitioner's arrest and statements on the night of the arrest. See Resp't Ex. F at 22-24.  Officer Geraci described the victim as "laying on the ground with half his head peeled off at the earlobe." Id. at 20, 26.  On August 31, 2007, a Wyoming County grand jury charged Petitioner

-4-

with second-degree attempted murder, first-degree assault, and second-degree assault. See Resp't Ex. G.

Subsequently, Petitioner retained new counsel, Michael Mohun, Esq. In a letter to counsel on October 8, 2007, Petitioner described the extreme side-effects he suffered from taking the anti-depressant Paxil. Petitioner also listed a number of "goals," including, "staying out of prison"; "[b]lame a drug and not me - if possible"; and "civil lawsuit against . . . Paxil and generic mfr." See Resp't Ex. H at 4-5. Attorney Mohun later filed a Notice of Intent to Proffer Psychiatric Evidence to support the defenses of "extreme emotional disturbance" or "intoxication." See Resp't Ex. I.

On November 8, 2007, a Huntley hearing was conducted with respect to Petitioner's motion to suppress his statements to Officer Geraci. See Resp't Ex. J. The court denied the motion. See Resp't Ex. K.

Counsel retained a psychiatric expert, Jeffrey J. Grace, M.D., Chief of Forensic Medicine at Buffalo Psychiatric Center, to determine whether Petitioner was competent to stand trial, and to advise whether Petitioner could assert the defenses of extreme emotional distress or intoxication. See Resp't Exs. L, M. In order to aid Dr. Grace, counsel provided him with certain material, including Petitioner's October 8, 2007 letter, which, according to counsel, described Petitioner's mental state "before Paxil" and

"after Paxil." See Resp't Ex. L.  On February 19, 2008, Dr. Grace issued his report (hereinafter "the Grace report") finding that Petitioner "was competent to proceed with court proceedings." Dr. Grace also found, however, that at the time of the crime, Petitioner was "act[ing] under the influence of an extreme emotional disturbance." See Resp't Ex. M.  Dr. Grace referenced and attached to his report the documents forwarded by counsel, including Petitioner's October 8, 2007 letter to counsel.  Id. Counsel later produced the Grace report, with attachments, to the prosecution and the court, citing his disclosure obligations under CPL § 240.30.  See Resp't Ex. N.

Counsel also retained a "blood spatter expert," Dr. Herbert L. MacDonnell.  See Resp't Ex. O.  After reviewing the victim's medical records as well as Petitioner's shoes and clothing from the night of the assault, Dr. MacDonnell issued a report, dated January 9, 2008 ("MacDonnell report"), opining, among other things, that Petitioner's shoes could not have caused the victim's injuries because of the "directionality" of the blood stains on the shoes and clothing, and the "very small amount of what appears to be bloodstains on [Petitioner's] clothing and shoes."  See Resp't Ex. O.

**B.   The Plea**

The People offered Petitioner a plea deal, following which Petitioner sent counsel a letter from jail on April 3, 2008,

stating that, days earlier, he had decided to abruptly reduce his dose of Paxil.  In this letter, Petitioner noted, among other things, that "[he] [was] - of course - leaning towards accepting the plea deal . . . ."  See Resp't Ex. P.

On April 10, 2008, Petitioner appeared with counsel and entered a plea of guilty to Attempted Assault in the First Degree. See Resp't Ex. Q.  On the record, Petitioner acknowledged that he understood that, in satisfaction of the entire indictment, he was pleading guilty to Attempted Assault in the First Degree, a Class C felony, which would carry a determinate sentence ranging from 3 ½ to 15 years, at the judge's discretion, along with 2 ½ to 5 years of post-release supervision.  Id. at 2-3, 5-7.  As part of the plea, Petitioner also waived his right to appeal, and executed a formal waiver.  Id. at 6-8; Resp't Ex. R.  Petitioner acknowledged that he had discussed the plea with counsel, and that his plea had not been induced by any other promises or threats.  See Resp't Ex. Q at 8-9.  He also stated that he understood that he was giving up various rights, including the right to a jury trial and to testify.  Id. at 9-10.  He then formally admitted the elements of attempted assault in connection with his attack on Preen.  Id. at 11.

On April 25, 2008, Petitioner consulted Paul A. Kettl, M.D., a psychiatrist, who reported that Petitioner's current "mood is

good," and that Petitioner will "gradually taper Paxil over the next couple of weeks."   <u>See</u> Resp't Ex. S.

### C.   Motion to Withdraw the Plea

Petitioner subsequently fired attorney Mohun and hired new counsel, Scott M. Green, Esq., who filed a motion dated July 11, 2008, to withdraw Petitioner's plea on the grounds that it was involuntary.   Petitioner alleged that: (1) attorney Mohun "coerced" him into accepting the plea by threatening that the court would otherwise raise his bail; and (2) he was not competent to enter a voluntary plea because, prior to the plea hearing, he reduced his Paxil dosage and, as a result, could not "comprehend and understand the ramifications of his plea."   <u>See</u> Resp't Ex. T at ¶¶ 10, 19.   In a decision and order dated July 22, 2008, the county court denied Petitioner's motion.   <u>See</u> Resp't Ex. V at 2.

### D.   Sentencing

Petitioner appeared with counsel for sentencing on July 25, 2008.   At that time, the court imposed a determinate term of fifteen years imprisonment, along with five years of post-release supervision.   <u>See</u> Resp't Ex. W.

### E.   Direct Appeal

Petitioner filed a counseled notice of appeal in the Appellate Division, Fourth Department.   <u>See</u> Resp't Ex. X.   The People moved to dismiss the appeal for failure to perfect.   <u>See</u> Resp't Ex. Y. Subsequently, Petitioner retained new counsel, who opposed the

motion and requested additional time.  See Resp't Ex. AA.  On April 15, 2010, the Appellate Division granted the People's motion to dismiss, stating that "the appeal is dismissed without further order unless the appeal is perfected on or before July 14, 2010." See Resp't Ex. BB.  On July 12, 2010, Petitioner, through counsel, submitted a letter to the Appellate Division stating that Petitioner had "determined to withdraw his appeal." See Resp't Ex. CC.  In a letter dated July 19, 2010, the Appellate Division informed Petitioner that his appeal had been dismissed on July 14, 2010.  See Resp't Ex. DD.

### F.  Motion to Vacate the Judgement of Conviction

On March 11, 2011, Petitioner filed a counseled motion, pursuant to N.Y. Crim. Proc. Law ("CPL") § 440.10, to vacate the judgment of conviction on the following grounds: (1) his plea was involuntary because of Petitioner's withdrawal symptoms from a reduction of Paxil; (2) attorney Mohun was ineffective prior to and at the plea proceeding; and (3) the county court improperly refused to recuse itself.  See Resp't Ex. EE.  Among other things, Petitioner attached the following to his motion: a report dated August 4, 2010, authored by Dr. Kevin D. Whaley, a medical expert, opining that the victim's injuries had been caused by a stroke rather than blunt force trauma.  Id. at attached Ex. 2 (hereinafter "the Whaley report"); and a report dated January 6, 2011, authored by Peter R. Breggin, M.D. (hereinafter "the Breggin report"), a

psychiatric expert, opining that Petitioner had not been competent at the time of the plea due to his withdrawal from Paxil.  See Resp't Ex. EE (attaching Ex. 12) (hereinafter "the Breggin report").

In a decision and order dated April 21, 2011, the Wyoming County Court denied the motion.  See Resp't Ex. HH.  Leave to appeal was denied.  See Resp't Ex. LL.

### G.    The Habeas Corpus Petition

This habeas corpus petition followed, wherein Petitioner seeks relief on the following grounds: (1) involuntary guilty plea; and (2) ineffective assistance of counsel.  See Pet. ¶ 12 (Dkt. No. 1); Addendum ("Pet. Add."); Reply (Dkt. No. 15).

The Court points out that Petitioner lists "[i]nnocence of the petitioner" at ground four of the petition and refers the Court to his attached addendum for the supporting facts.  See Pet. ¶ 12, Ground Four.  As a result of Petitioner having listed this issue as a stand-alone claim in the petition, Respondent addressed it as a such in its answering papers.  However, in his Reply, Petitioner asserts that Respondent has "mischaracterize[d] and misconstrue[d]" Petitioner's claim, explaining that:

> the issue is not, as stated by Respondent, whether Mr. Beckary was factually innocent; rather[,] the question is whether Mr. Beckary's attorney, Michael Mohun, unreasonably failed to conduct a required investigation into the question of Mr. Beckary's innocence . . . .  Nothing put forth, either in Mr. Beckary's petition,

> pursuant to Criminal Procedure Law 440.10, or
> in his Section 2254 petition can be
> interpreted to constitute a claim of actual
> innocence.

Reply at 3. Because Petitioner is represented by counsel in the instant proceeding and because counsel has explicitly indicated that he is not raising a claim of actual innocence, the Court construes the habeas petition as not including a stand-alone claim of actual innocence, and only relies on Petitioner's "innocence" argument in the context of and in support of his ineffective assistance of counsel claim.

Moreover, in the addendum attached to his habeas petition, Petitioner alleges that the prosecution engaged in misconduct at the grand jury proceeding by eliciting false testimony from Officer Geraci. See Pet. Add. at 6-8. As Respondent correctly points out, however, these allegations are stated only in the factual portion of his addendum. See Resp't Mem. of Law at 29. Further, the allegations are not labeled or otherwise identified as or in the context of a stand-alone claim of prosecutorial misconduct. Notably, the first sentence of the addendum states that "[P]etitioner . . . submits the attached petition . . . raising the following constitutional claims: a) [i]neffective assistance of counsel; and b) [i]nvoluntariness of his guilty plea." Pet. Add. at 1. Said addendum then goes on to argue these two points as two discrete, stand-alone claims. Id. Respondent argues that the habeas petition does not include a claim of prosecutorial

misconduct, and that the Court should not liberally construe Petitioner's counseled pleadings as raising such. Petitioner concedes that the claim was not specifically listed in the grounds for relief," but, nonetheless, urges the Court to "evaluate[] the issue" because "to hold otherwise would elevate form over substance." Reply at 10. Petitioner does not cite caselaw in support of his position, nor is the Court aware of any that is on point with the situation presented here that would compel it to liberally construe Petitioner's counseled pleadings. Accordingly, the Court declines to liberally construe Petitioner's addendum as raising a stand-alone claim of prosecutorial misconduct. See e.g., Jones v. Goord, 435 F.Supp.2d 221, 261 (S.D.N.Y. 2006) ("the liberal reading of pleadings afforded to pro se litigants is not applicable when plaintiffs are represented by sophisticated counsel . . . . Plaintiffs have stated their claims, and those claims are what they are.").

Additionally, in his Reply, Petitioner asserts "[t]he arguments [set forth therein] establish that the instant habeas corpus petition demand as a minimum an evidentiary hearing on the claims presented." Reply at 1. Indeed, "[a] district court has broad discretion to hear further evidence in habeas cases." Nieblas v. Smith, 204 F.3d 29, 31 (2d Cir. 1999) (citing Townsend v. Sain, 372 U.S. 293, 318 (1963)). "[W]here specific allegations before the court show reason to believe that the petitioner may, if

the facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry." Bracy v. Gramley, 520 U.S. 899, 908-09 (1997) (quoting Harris v. Nelson, 394 U.S. 286, 300 (1969)); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."). As discussed below, it is abundantly clear that Petitioner's claims have no merit and that there are no grounds for habeas relief. Accordingly, habeas relief is denied, Petitioner's request for an evidentiary hearing is denied, and the petition is dismissed.

## III. The Exhaustion Requirement

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); see, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 843-44 (1999); accord, e.g., Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." Daye v. Attorney

General, 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).

**IV.   The AEDPA Standard of Review**

For federal constitutional claims adjudicated on the merits by a state court, the deferential standard of review codified in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") applies. A habeas petitioner can only obtain habeas corpus relief by showing that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(1)-(2).

**V.   Analysis of the Petition**

**1.   Involuntary Guilty Plea**

Petitioner asserts that his guilty plea was involuntary because: (1) counsel coerced him to enter a plea even though he was rendered incompetent by a reduction in his anti-depressant medication Paxil; and (2) counsel threatened that if Petitioner did not accept the plea, the judge would increase his bail.   See Pet. ¶ 12, Ground Three;   Pet. Add. at 25-34.   Petitioner challenged the voluntariness of his plea in his motion to vacate, and the county court denied the claim on a state procedural ground, pursuant to CPL § 440.10(2)(c), finding that "[a]lthough sufficient facts

appear in the record to have permitted appellate review of the [c]ourt's decision denying the motion to withdraw the plea, the defendant unjustifiably withdrew his direct appeal without seeking such review."  The county court went on to alternatively deny the claim on the merits.  <u>See</u> Resp't Ex. HH at 2.  In its answering papers, Respondent asserts that the claim is procedurally barred by an adequate and independent state law ground, namely CPL § 440.10(2)(c).  <u>See</u> Resp't Mem. of Law at 17-19.  Petitioner disagrees with the position taken by Respondent, arguing that the claim "is not procedurally barred; nor does the state court's rejection of this claim rest upon an independent adequate state law ground."  Reply at 14.  Because this claim can be easily resolved on the merits and because both parties have alternatively argued the merits of this claim, the Court bypasses the procedural default issue and addresses the claim on the merits.  To the extent the county court adjudicated this claim on the merits in an alternative holding, this Court applies the AEDPA standard.  Under that standard, Petitioner's claim is meritless and does not warrant habeas relief.

It is well-settled that "[a] criminal defendant may not be tried unless he is competent, and he may not . . . plead guilty unless he does so 'competently and intelligently.'"  <u>Godinez v. Moran</u>, 509 U.S. 389, 396 (1993) (quoting <u>Johnson v. Zerbst</u>, 304 U.S. 458, 468 (1938) and citing <u>Pate v. Robinson</u>, 383 U.S. 375, 378

(1966)).  "For the plea to be voluntary, '[i]t is axiomatic' that the defendant must at least be competent to proceed." Oyague v. Artuz, 393 F.3d 99, 106 (2d Cir. 2004) (quoting United States v. Masthers, 539 F.2d 721, 725 (D.C. Cir. 1976)).  The federal standard for determining competency to stand trial or plead guilty is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." Godinez v. Moran, 509 U.S. at 396-397 (quoting Dusky v. United States, 362 U.S. 402 (1960) (per curiam)). "When a guilty plea is entered, the defendant waives several federal constitutional rights, including the right to trial by jury, the right to confront his accusers, and the privilege against compulsory self-incrimination." Oyague, 393 F.3d at 106 (citing Boykin v. Alabama, 395 U.S. 238, 243, (1969)).  Thus, a guilty plea is valid only if the record demonstrates that it is voluntary and intelligent.  Boykin, 395 U.S. at 242-43.

"[A]lthough 'the governing standard as to whether a plea of guilty is voluntary for purposes of the Federal Constitution is a question of federal law,' questions of historical fact, including inferences properly drawn from such facts, are in this context entitled to the presumption of correctness accorded state court factual findings.'" Parke v. Raley, 506 U.S. 20, 35 (1992) (quoting Marshall v. Lonberger, 459 U.S. 422, 431 (1983) (internal

citation omitted)).   Statements made by a defendant at a plea hearing constitute a "formidable barrier" that cannot be easily overcome in subsequent collateral proceedings because "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).

Applying these standards to the instant case, the Court finds no basis to conclude that Petitioner's guilty plea was anything other than voluntary, knowing and intelligent.

At the plea proceeding, Petitioner acknowledged on the record that there were no impediments to him entering the plea, including that: he fully understood the plea agreement; he had an "adequate opportunity to talk [it] over" with his attorney; nobody had made additional promises to induce him to enter the plea; and nobody was "pressuring [him] or forcing [him] in anyway to do this against [his] will." <u>See</u> Resp't Ex. Q at 8-9.   Moreover, the plea transcript demonstrates that Petitioner was lucid and coherent, and that he did not mechanically respond to the court's questions with "yes" and "no" answers.   When asked if he understood the proposed sentence, Petitioner answered, "[y]es, your Honor, I do." <u>Id.</u> at 5-6.   When asked if he understood the proposed plea, Petitioner answered, "[y]es, your Honor, I do."   When asked if he had "an

adequate opportunity" to discuss the plea with his attorney and whether his attorney "answered all [his] question to [his] satisfaction," Petitioner replied, "[h]e has indeed, your Honor." Notably, at this time, Petitioner, nor his attorney, mention or otherwise indicate to the Court Petitioner was incompetent to enter the plea.  Moreover, when asked if he was promised anything or had been pressured or forced to enter the plea against his will, Petitioner answered, "[n]o, sir."  When asked whether he had questions about any of the rights or consequences of the plea, he answered in the negative, and he answered in the affirmative when asked if he was ready to go forward with the plea.  Id. at 8-9. When asked whether he would formally plead guilty to the charges, Petitioner affirmatively stated, "[y]es, your Honor, I do plead guilty."  Petitioner then went on to admit to the specific facts in the indictment.  Id. at 8-9, 11.

The Court agrees with Respondent that Petitioner's in-court, under oath statements, as summarized above, undermine his contention that his reduced Paxil dosage impaired his mental abilities, such that he was mentally incapable of comprehending the plea proceeding.  Furthermore, the evidence Petitioner now offers of his alleged incompetence at the plea -- namely, his April 3, 2008 letter to counsel and the Breggins' report (see Pet. Add. at 25-26) -- do nothing to alter this Court's conclusion that Petitioner's plea was voluntary, knowing, and intelligent.

To support his position, Petitioner points to his April 3, 2008 letter to counsel, wherein he discusses, among other things, his mental and physical experiences with Paxil. See Resp't Exs. H, P. However, as Respondent points out, this letter undermines Petitioner's position rather than support it because, when read as a whole, it represents the coherent thought process of a rational individual. See Resp't Mem. of Law at 42. Indeed, the April 3, 2008 letter, which is dated just one week before the plea hearing, contains a scholarly description of the side effects of Paxil reduction. Indeed, such a letter cannot be considered the work of a man mentally unfit "to consult with his lawyer with a reasonable degree of rational understanding." Godinez, 509 U.S at 396-97.

Similarly, Petitioner's reliance on the Breggins' report as evidence of his incompetence at his plea is equally unavailing for several reasons. First, the Breggins' report relies on Petitioner's self-serving statements made to Dr. Breggins years after the plea. Second, various of the assertions contained in the lengthy Breggins' report -- e.g., that Petitioner was physically and mentally exhausted at the plea hearing, that Petitioner was slurring his speech at the plea hearing, that Petitioner gave "yes" and "no" answers that were "probably previously-scripted in [Petitioner's] mind" -- are simply belied by the transcript of the plea proceeding, which demonstrates that Petitioner was lucid when he answered the questions posed to him by the court. Finally, the

conclusion reached in the Breggins' report -- i.e., that Petitioner must have been incompetent at the time of the plea -- is undermined by Dr. Breggins' own account of Petitioner's post-hearing experience with Paxil.  That is, according to Dr. Breggins, on March 30 and 31, 2008, Petitioner reduced his Paxil dosage by half (from 30 mg to 15 mg per day).  The report indicates that on April 1, Petitioner raised his dose to 20 mg, and remained at that dosage throughout the April 10 plea hearing.  According to Dr. Breggins, "[t]his remained a very rapid reduction that was certain to cause adverse effects in a man who had been taking the drug steadily for 8 years."  See Resp't Ex. E (attaching Ex. 12 at 21).  Yet, according to this same report, Petitioner consulted another psychiatrist, Dr. Kettl, on April 25, 2008 (15 days after the plea hearing), and Dr. Kettl reported that Petitioner had further reduced his Paxil dose (from 20 mg to 15 mg).  Id.  Upon examining Petitioner at the lower dose, Dr. Kettl found that "[c]urrently his mood is good," and diagnosed Petitioner only with "alcohol abuse."  See Resp't Ex. S.  As Respondent points out in its reply papers, all of the extreme side effects that Petitioner claimed to have had at the time of the hearing when his dose was reduced were absent.

Aside from the Paxil side effects, Petitioner also asserts that his plea was involuntary because his counsel threatened that if Petitioner did not accept the plea, the judge would increase his

bail.  See Pet. Add. at 31.  This claim fails since Petitioner has offered no proof other than his self-serving assertion in support of the claim.  Additionally, the record is clear that Petitioner assured the court at the time of the plea that no one had coerced him into pleading guilty.  See Resp't Ex. Q at 8-9.

In sum, Petitioner's claim is unsupported by the record and is meritless.  Accordingly, the Court finds that the state court's adjudication of this claim did not contravene or unreasonably apply clearly established Supreme Court law.  The claim is therefore denied in its entirety.

## 2.   Ineffective Assistance of Counsel

Petitioner argues, as he did in his CPL § 440.10 motion, that Petitioner was ineffective because counsel: (1) failed to retain a medical expert to determine the cause of the victim's injuries; (2) labored under "a conflict of interest with Petitioner," as evidenced by his request for a deletion from the MacDonnell report; (3) violated the attorney-client privilege by disclosing Petitioner's October 8, 2007 letter to counsel; (4) failed to advise Petitioner of the intoxication defense; and (5) advised Petitioner to accept the guilty plea, despite evidence that Petitioner did not cause the victim's injuries and even though counsel knew that Petitioner was not competent at the time of his plea.  See Pet. ¶ 12, Grounds One-Two.  The county court

adjudicated this claim on the merits and the AEDPA therefore applies.  Under that standard, the claim is meritless.

Under the well-established authority, in order to prevail on an ineffective assistance of counsel claim a petitioner must show both that 1) his or her counsel's performance was deficient, in that it failed to conform to an objective, reasonableness threshold minimum level, and 2) that deficiency caused actual prejudice to the defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984); Greiner v. Wells, 417 F.3d 305, 319 (2d Cir.2005), cert. denied, 546 U.S. 1184 (2006).  To be constitutionally deficient, the attorney's conduct must fall "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690; Greiner, 417 F.3d at 319.  An attorney's performance is judged against this standard in light of the totality of the circumstances and from the perspective of counsel at the time of trial, with every effort being made to "eliminate the distorting effects of hindsight [.]" Strickland, 466 U.S. at 689;  Greiner, 417 F.3d at 319.

Courts generally presume under Strickland that constitutionally adequate assistance has been rendered, and significant decisions have been made through the exercise of sound professional judgment to which "a heavy measure of deference" is afforded.  Strickland, 466 U.S. at 691;  Greiner, 417 F.3d at 319.

Prejudice is established by showing that there is a "reasonable probability" that but for counsel's deficiencies "the result of the proceeding would have been different." Strickland, 466 U.S. at 694; Henry v. Poole, 409 F.3d 48, 63-64 (2d Cir. 2005). In the context of a guilty plea, a petitioner must show that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have pleaded guilty and instead would have exercised his or her right to a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Coffin, 76 F.3d 494, 498 (2d Cir.), cert. denied, 517 U.S. 1147 (1996).

"[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, a habeas petitioner's unconditional guilty plea waives all claims of ineffective assistance of counsel relating to events prior to the guilty plea that did not affect the voluntariness of his plea. Id. at 267; accord, e.g., Coffin, 76 F.3d at 497-98.

### (A) The Claims Unrelated to the Guilty Plea are Precluded from Review by Tollett

Petitioner argues that counsel was ineffective because: he failed to retain a medical expert to determine the cause of the

victim's injuries; he labored under "a conflict of interest with Petitioner"; he disclosed to the county court "privileged and confidential information"; and that counsel failed to advise Petitioner of "the intoxication defense." These claims, which involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself, were waived by Petitioner's voluntary, knowing and intelligent guilty plea (see discussion *supra*, at "Section V, 1"). See Tollett, 411 U.S. at 267; see e.g., Burwell v. Perez, 10 Civ. 2560 (CM) (FM), 2012 U.S. Dist. LEXIS 65773 (S.D.N.Y. May 7, 2012) ("Because [Burwell's] guilty plea was voluntary and intelligent, Burwell's ineffective assistance claim, which concerns only his counsel's pre-plea actions (or failures to act), fails to state a violation of his constitutional rights that this Court can consider.") (citations omitted); Rodriquez v. Conway, 07 Civ. 9863 (JSR) (AJP), 2009 U.S. Dist. LEXIS, *73-74 (S.D.N.Y. March 13, 2009) (finding Petitioner's ineffective assistance of counsel claim based on counsel's failure to timely file a notice of intent to produce psychiatric evidence in support of extreme emotional disturbance defense barred by voluntary guilty plea), report and recommendation adopted by 2009 U.S. Dist. LEXIS 89340 (S.D.N.Y. Sept. 27, 2009); Sullivan v. Goord, No. 05-CV-6060(DGL)(VEB), 2007 U.S. Dist. LEXIS 98564, *11 (W.D.N.Y. Aug. 14, 2007) (Petitioner's "claims of ineffectiveness ascribed to [his first] attorney . . . are barred under Tollett v. Henderson because

the substance of those claims do not relate to the voluntariness of [petitioner's] plea or the advice he received with regard to pleading guilty."), report and recommendation adopted by 2007 U.S. Dist, LEXIS 69444 (W.D.N.Y. Sept. 19, 2007).

**(B)   The Claims Related to the Guilty Plea are Meritless**

Petitioner claims that his counsel was ineffective because he advised him to accept the guilty plea: (1) despite purported evidence that Petitioner did not cause the victim's injuries; and (2) even though counsel knew that Petitioner was not competent at the time of the plea.  See Pet. ¶ 12, Ground Two.  These claims are meritless.

With respect to the former issue, there was overwhelming evidence –- prior to the plea -- that Petitioner caused the victim's injuries.  Notably, Petitioner confessed to the assault of Preen after his arrest, and this confession was fully supported by the evidence presented at the felony hearing.  Vosberg testified that she saw Petitioner's "upper body" as he stood behind Preen's truck and appeared to be "beating somebody's vehicle or something . . . ."  See Resp't Ex. A at 7.  According to Vosberg, Petitioner "started screaming and jumping up and down.  I hate you.  I'm going to kill you.  Bunch of swear words."  Id.  Vosberg also testified that she "started screaming," but Petitioner "kept jumping and jumping and kicking."  Id.  Moments later, she found Preen in the parking lot, horribly beaten.  Id. at 8.  In light of Petitioner's

confession, which was supported by Vosberg's account of Petitioner beating the victim in the parking lot, counsel may have reasonably decided that investigation of the victim's extensive physical injuries would only serve to inculpate Petitioner further. Moreover, the particular medical expert that Petitioner faults counsel for having not called -- namely, Dr. Whaley who prepared a report that was submitted to the county court in support of Petitioner's motion to vacate -- concludes that all of the victim's injuries were caused by a stroke, rather than being kicked multiple times in the face and head.  Petitioner asserts that the Whaley "report raised a reasonable claim of innocence, which is critical in view of [Petitioner's attorney's] refusal to have a forensic medical expert examine the cause of the Preen injuries, prior to advising Mr. Beckary to plead guilty."  Pet. Add. at 10.  The Court finds this contention meritless since the conclusion set forth in the Whaley report is refuted by Petitioner's confession, the physical evidence of the extensive injuries suffered by the victim, and the pre-trial hearing testimony.  Thus, the Court finds that counsel's decision not to have a forensic medical expert examine the cause of the victim's injuries was not unreasonable under the circumstances, nor is there a reasonable probability that, had counsel performed as Petitioner wished him to, Petitioner would have chosen to stand trial rather than accept the plea.

Similarly, Petitioner's second argument -- that counsel improperly advised Petitioner to plead guilty even though he knew Petitioner was suffering from Paxil withdrawals -- fails insofar as Petitioner was competent at the time he entered the plea (see discussion *supra* at Section "V, 1" ). Moreover, Petitioner has failed to establish a reasonable probability that, but for counsel's actions in this respect, he would have rejected the plea and insisted upon going to trial. Notably, in Petitioner's own letter of April 3, 2008 to his attorney (in which he sets forth the withdrawal symptoms of Paxil), he specifically states, "I am - of course - leaning towards accepting the plea . . . ." See Resp't Ex. P.

In sum, Petitioner's ineffective assistance of counsel claim is meritless. Accordingly, the Court cannot find that the state court's adjudication of this claim contravened or unreasonably applied clearly established Supreme Court law. The claim is therefore denied in its entirety.

## V.  Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Dkt. No. 1) is denied, and the petition is dismissed. Because Petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of

<u>Parole</u>, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED.**

**S/Michael A. Telesca**

_____

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     July 25, 2012
           Rochester, New York